IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MERVYN LOPEZ ALDABA, | § | |
| TDCJ-CID NO. 1506941, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-11-2166 |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Mervyn Lopez Aldaba, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), filed a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (the "Petition") (Docket Entry No. 1) challenging a criminal conviction in state court. The Respondent has filed a Supplemental Motion for Summary Judgment with Brief in Support (the "Supplemental Motion for Summary Judgment") (Docket Entry No. 21). After reviewing the record, the court has determined that the motion should be granted.

## I. Procedural History

On May 1, 2008, a jury in the 232nd District Court of Harris County convicted Mervyn Lopez Aldaba of capital murder and

sentenced him to life in prison.[1]  The Fourteenth Court of Appeals of Texas affirmed Aldaba's conviction on April 16, 2009.[2]  The Texas Court of Criminal Appeals refused Aldaba's Petition for Discretionary Review ("PDR") on August 19, 2009.[3]  The Supreme Court of the United States denied Aldaba's petition for a Writ of Certiorari on March 1, 2010.[4]

On September 24, 2010, Aldaba filed an application for a writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure.[5]  The Texas Court of Criminal Appeals denied the application without a hearing and without a written order on the findings of the trial court.[6]  Aldaba filed the instant habeas petition on June 8, 2011.[7]

In his Original Petition Aldaba alleged eighteen claims for relief.[8]  On August 26, 2011, Respondent filed his first Motion for

---

[1]Judgment of Conviction, Docket Entry No. 8-4, pp. 151-52.

[2]Court of Appeals Opinion, Docket Entry No. 8-17, p. 130.

[3]See Aldaba v. State, PDR No. 0931-09, Docket Entry No. 8-17, p. 10.

[4]Aldaba v. Texas, 130 S. Ct. 1704 (2010).

[5]Aldaba v. State, Application No. WR-75,327-01, Docket Entry No. 8-7, p. 8.

[6]Order, Docket Entry No. 8-17, p. 2.

[7]Petition, Docket Entry No. 1, p. 1.

[8]Id.

Summary Judgment.[9]  In a Memorandum Opinion and Order entered on
February 16, 2012, the court partially granted and partially denied
that motion, leaving Aldaba with four remaining claims.[10]
Respondent has now filed its second Motion for Summary Judgment on
Aldaba's remaining claims[11] to which Aldaba has filed a Motion in
Opposition.[12]

## II.  <u>Facts Established at Trial</u>

The following excerpt from the Fourteenth Court of Appeals'
opinion is relevant in evaluating the Petition and the Motion for
Summary Judgment:[13]

> Appellant [Aldaba] and complainants, Angelito
> Montemayor and Eloisa Cruz, arranged to meet on a street
> in front of a home for the purpose of selling narcotics
> to Cloefe Ennis, who lived there.  As they waited for
> Ennis to arrive at the home, appellant shot and killed
> Montemayor and Cruz.  A neighborhood resident saw the
> shooting through a window in his home and saw the shooter
> leave the scene in a white truck.  Police arrived on the
> scene in response to calls regarding a shooting in
> progress.
>
> Another neighborhood resident heard noises outside
> his home and heard a vehicle leave the scene in front of

---

[9]Respondent's Motion for Summary Judgment with Brief in
support ("First Motion for Summary Judgment"), Docket Entry No. 11,
p. 1.

[10]Memorandum Opinion and Order, Docket Entry No. 15, pp. 3-6.

[11]Supplemental Motion for Summary Judgment, Docket Entry
No. 21, p. 1.

[12]Petitioner's Motion in Opposition to Summary Judgment with
Brief in Support ("Petitioner's Motion in Opposition"), Docket
Entry No. 24, p. 1.

[13]Court of Appeals Opinion, Docket Entry No. 8-17, pp. 131-33.

his home.  This man recognized the sound of the vehicle's muffler as belonging to appellant's white truck.  This man gave appellant's cell phone number to investigating officers.

Investigating officers who arrived on the scene discovered the bodies of Montemayor and Cruz, as well as a number of spent shell casings and cigarette butts, one of which was later linked by DNA to appellant. Investigators did not find any weapons at the scene.

On the same night, appellant gave a gun to a friend and asked the friend to hold on to it.  Investigators later recovered the weapon as part of an unrelated narcotics investigation and determined the weapon had been used in the shootings of Montemayor and Cruz.

. . .

On cross-examination, the State questioned appellant about his interview with homicide detectives on the day of his arrest, prompting the following exchange:

[PROSECUTOR]:  . . . But you recall a conversation with two homicide detectives?

[APPELLANT]:  Yes, sir.

[PROSECUTOR]:  During that interview they specifically asked you if you heard a shooting about a Phillippino [sic] couple didn't you?

[APPELLANT]:  Yes, sir.

[PROSECUTOR]:  You lied to them about that?

[APPELLANT]:  I exercised my right to remain silent yes, sir.

[PROSECUTOR]:  That's actually not true. You lied and said no didn't you?

[APPELLANT]:  I told him no yes [sic] 'cause I didn't have a lawyer.

[PROSECUTOR]:  In fact they got more specific with you. They asked if you heard through any conversations in the Phillippino [sic] community about the murders, whether

-4-

you heard any news reports about the murders.  Even asked
you if you were familiar with the location of the murder
and each time you said no.  Isn't that true?

[APPELLANT]:  The location sir.  Yes, I remember that
question, but the rest of it I don't remember them
talking about that sir.

[PROSECUTOR]:  All right.  But you said you weren't even
familiar with the location of the murder didn't you?

[APPELLANT]:  Yes, sir.  I told them that.

[PROSECUTOR]:  So again you lied to them.  You knew about
that location didn't you?

[APPELLANT]:  Yes, sir I lied to them.

[PROSECUTOR]:  Now they continued asking you whether or
not you killed anybody and you said no.

[APPELLANT]:  No I didn't.  They didn't get to that
question sir.

[PROSECUTOR]:  Well, yes they did Mr. Aldaba.  Do you not
recall them asking you that question?

[APPELLANT]:  No sir.

[PROSECUTOR]:  How about the fact that at some point you
denied killing the Phillippino [sic] couple when they
asked you.  You recall that?

[APPELLANT]:  No, sir.

[PROSECUTOR]:  Do you recall denying even hearing
anything about it?

[APPELLANT]:  No, sir.

[PROSECUTOR]:  Okay.  And you deny that you told these
detectives you know absolutely nothing about a murder?

[APPELLANT]:  No, sir.

[PROSECUTOR]:  Would you agree with me this would have
been an opportunity for you to share with the detectives
the version of events that you're sharing with this jury
today?

[APPELLANT]:  Yes, sir.  If I had my lawyer present I would sir.

[PROSECUTOR]:  And that's fine but lawyer or no lawyer you had an opportunity to tell these detectives what had happened, the version of events you're telling this jury today you chose rather to lie about it didn't you?

[DEFENSE ATTORNEY]:  Judge that was asked and answered.

[TRIAL COURT]:  Overruled.

[APPELLANT]:  Sir?

[PROSECUTOR]:  You chose to lie about it didn't you?

[APPELLANT]:  Yes, sir.


### III.  Grounds for Relief

Aldaba now asserts the following grounds for relief:[14]

A.   Aldaba's trial counsel was ineffective for failure to:

    3.   object to prosecutor's comments concerning Aldaba's invoking his right to remain silent;

    4.   request a hearing regarding the voluntariness of Aldaba's statement to the police;

    5.   request an instruction limiting the use of Aldaba's statement to impeachment and not as general evidence;

    6.   request a jury instruction pursuant to Tex. Code Crim. Proc. Ann. art. 38.22.


### IV.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 codified at 28 U.S.C. § 2254, findings of fact made by a state court are "presumed to be correct."  § 2254(e)(1).  This statute

---

[14]Memorandum Opinion and Order, Docket Entry No. 15, pp. 5-6.

-6-

overrides the ordinary summary judgment rule.  Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002) (overruled on other grounds by Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004)).  Therefore, a court will accept findings made by the state court as correct unless the habeas petitioner can rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

The provisions of § 2254(d) set forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 117 S. Ct. 2059, 2066 n.7 (1997).  A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  Williams v. Taylor, 120 S. Ct. 1495, 1519-20 (2000).  A decision is an unreasonable application of clearly established federal law "if the state court

-7-

identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id. at 1523.

## V. Ineffective Assistance of Counsel

A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in Strickland v. Washington, 104 S. Ct. 2052 (1984). Under Strickland Aldaba must establish that his counsel's performance was deficient and that actual prejudice resulted from his counsel's deficient performance. Id. at 2064. The failure to demonstrate either deficient performance or actual prejudice is fatal to an effective assistance claim. Green v. Johnson, 160 F.3d 1029, 1035 (5th Cir. 1998).

## A. Actual Prejudice

Even a professionally unreasonable error does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Strickland, 104 S. Ct. at 2066. Instead, the petitioner must show actual prejudice. Id. Actual prejudice is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the trial would have been different. Id. at 2068. The petitioner cannot show actual prejudice if the evidence of guilt is so overwhelming that the error could not have contributed to the jury's guilty verdict. See id. at 2059 ("the aggravating circumstances were so

-8-

overwhelming that no substantial prejudice resulted"); <u>Pondexter v.</u> <u>Quarterman</u>, 537 F.3d 511, 525 (5th Cir. 2008) ("the overwhelming evidence of [the petitioner's] guilt precluded his establishing prejudice").

Aldaba's four remaining claims are based on the use at trial of Aldaba's false statements to the police.  Therefore, to show prejudice there must be a reasonable probability that the jury would have acquitted Aldaba without the use of those statements. If the jury would have found Aldaba guilty even without trial testimony about Aldaba's false statements to the police, Aldaba cannot show prejudice and his habeas claims will fail.  The state courts found that there was "overwhelming evidence of [Aldaba's] guilt."[15]  Aldaba thus bears the heavy burden of showing not only that "his counsel's deficiency prejudiced him," but also that "no reasonable jurist could conclude otherwise."  <u>Williams v. Thaler</u>, --- F.3d --- (5th Cir. 2012).

In the face of the overwhelming evidence against him, Aldaba has failed to meet this burden.  Aldaba testified that he shot the two victims.[16]  Although he stated that he did so in self-defense,[17]

---

[15]Court of Appeals Opinion, Docket Entry No. 8-17, p. 142; <u>see</u> <u>also</u> State's Proposed Findings of Fact, Conclusions of Law and Order ("Findings and Conclusions"), Docket Entry No. 8-17, p. 104 ("The Court agrees with the appellate court's opinion that 'the trial [court] outcome was not likely to have turned on the admission of applicant's statements'").

[16]Trial Transcript, Docket Entry No. 8-8, pp. 86, 92.

[17]Petition, Docket Entry No. 1, p. 8.

overwhelming evidence in the record shows otherwise.  For instance, Aldaba admitted to having a twenty-second cell phone conversation with a friend while one victim was allegedly trying to kill him.[18] Aldaba further testified that he shot the second victim four times in the back while she sat in her car.[19]  Aldaba acknowledged that he immediately fled from the police and tried to hide the gun.[20] The police did not find any guns or evidence at the scene to corroborate Aldaba's story.[21]  Aldaba acknowledged that his victims never fired a single shot at him.[22]  In light of these facts, as well as numerous others presented at trial, Aldaba has not shown that the jury's verdict in any way depended on Aldaba's false statements to the police.  As such, Aldaba has not carried his burden of demonstrating prejudice, and all of Aldaba's claims must fail.

For the sake of thoroughness the court will nevertheless examine the alleged deficiency of Aldaba's counsel's performance. See Strickland, 104 S. Ct. at 2071 (analyzing both prejudice and deficiency before concluding the petitioner's case was a "double failure").

_____

[18]Trial Transcript, Docket Entry No. 8-8, p. 101.

[19]Id. at 110.

[20]Id. at 111-12.

[21]Id. at 105.

[22]Id. at 110.

**B.   Deficiency**

An attorney's performance is deficient if it falls below an objective standard of reasonableness.  Strickland, 104 S. Ct. at 2064.  In determining whether counsel's performance was deficient judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that the trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy.  West v. Johnson, 92 F.3d 1385, 1400 (5th Cir. 1996).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Skinner v. Quarterman, 528 F.3d 336, 341 (5th Cir. 2008) quoting Cotton v. Cockrell, 343 F.3d 746, 752-53 (5th Cir. 2003).

Because Aldaba has not refuted them with clear and convincing evidence, this court relies on the following relevant factual findings adopted by the state habeas court:[23]

[Findings of Fact]

4.  The Court finds the facts asserted in the affidavit of Laine Lindsey [Aldaba's trial counsel] are true, and that the affidavit of Lindsey is credible.

. . .

6.  The Court finds based on the court reporter's record that the applicant's statement to the police was not admitted into evidence, but it was used by the State

---

[23]Findings and Conclusions, Docket Entry No. 8-17, pp. 101-02, 104.

to impeach the applicant when the applicant testified
during the guilt stage of his trial.

     7.   The Court finds based on the court reporter's
record that the applicant did not request a lawyer when
he gave his statement to the police.

. . .

     10.   The Court finds based on the credible affidavit
of Lindsey that Lindsey did not pursue the motions to
suppress because the applicant never suggested to Lindsey
that the applicant's statement was involuntary.

. . .

     12.   The Court finds based on the credible affidavit
of Lindsey that Lindsey did not request a limiting
instruction with regard to the applicant's statement to
the police only be used for impeachment purposes because
Lindsey did not want to call the jury's attention to the
applicant's false statements to the police again.

[Conclusions of Law]

     4.   The   applicant   was   not   entitled   to an
instruction under sections 6 and 7 of article 38.22 of
the Texas Code of Criminal Procedure.   Aldaba, 2009
WL 1057685 at *3-4.

The state habeas court concluded that Aldaba's attorney provided

effective assistance of counsel as required by Strickland.[24]

Because, as discussed below, the record supports the findings of

the state habeas court, Aldaba cannot show that his attorney was

deficient.

**1.   Claim One:  Aldaba's attorney failed to object to testimony
revealing that Aldaba had exercised his right to counsel and
his right to remain silent.**

Aldaba testified during his cross-examination that he made

false statements to the police.   Aldaba argues that he invoked his

_____

[24]Id. at 104, 106.

-12-

Sixth Amendment right to counsel and his right to remain silent prior to making those false statements.[25] Aldaba thus argues that the police obtained his false statements in violation of the Sixth Amendment, precluding their use at trial.[26] Aldaba asserts that his attorney was constitutionally ineffective because he failed to object to the introduction of these false statements at trial.[27]

An attorney's failure to make a futile objection cannot form the basis of an ineffective assistance claim. Means v. Johnson, 138 F.3d 1007, 1012 (5th Cir. 1998). The Texas state habeas court's Findings of Fact Nos. 6-7 make Aldaba's Sixth Amendment objection futile for a number of reasons.

Aldaba failed to invoke his Sixth Amendment rights. To successfully invoke his Sixth Amendment rights, the accused must "unequivocally" and "unambiguously" assert them. Berghuis v. Thompkins, 130 S. Ct. 2250, 2259-60 (2010), reh'g denied, 131 S. Ct. 33 (2010). When the accused "makes no statement" implicating the Sixth Amendment, the accused has not invoked his Sixth Amendment rights. Id. Here, the record does not reflect that Aldaba ever asked the police for an attorney or said he wished to remain silent. Therefore, because he "ma[de] no statement"

---

[25]Petitioner's Motion in Opposition, Docket Entry No. 24, p. 17.

[26]Id.

[27]Id.

-13-

concerning his rights, Aldaba did not avail himself of the Sixth Amendment.[28]  Whether Aldaba invoked the Sixth Amendment is "an objective inquiry." Davis v. United States, 114 S. Ct. 2350, 2355 (1994). Aldaba's failure to objectively invoke the Sixth Amendment made any objection based on the Sixth Amendment futile.

Moreover, by using Aldaba's false statements to impeach Aldaba's credibility as a witness, the prosecutor did not violate the Sixth Amendment. See Harris v. New York, 91 S. Ct. 643, 645–46 (1971) (permitting prosecutors to use statements gathered in violation of the Sixth Amendment for the purpose of impeaching the defendant's credibility as a witness); United States v. Cherry, 759 F.2d 1196, 1209 (5th Cir. 1985) (holding that Miranda "does not bar introduction of incriminating statements for purposes of impeach-ment on cross-examination"). The prosecutor mentioned Aldaba's statements during Aldaba's cross-examination, not during its case-in-chief. By pointing to Aldaba's "prior inconsistent utterances" the prosecutor "did no more than utilize the traditional truth-testing devices of the adversary process." Harris, 91 S. Ct. at 645–46. Doing so did not violate the Sixth Amendment. Id. Therefore, any Sixth Amendment objection would have failed.

---

[28]Respondent argues that Aldaba waived his rights by knowingly lying to the police. The court finds it unnecessary to address this argument given that Aldaba's objection would have failed for other reasons.

2.   **Claim Two:   Aldaba's attorney failed to request a hearing regarding the voluntariness of Aldaba's statement to the police.**

Aldaba argues that he made his statements to the police involuntarily because he ingested methamphetamine prior to making them.[29]  Aldaba therefore asserts that his false statements to the police were gathered in violation of his due process rights.[30]  Aldaba argues that his attorney should have requested a hearing to investigate the voluntariness of Aldaba's false statements to the police.[31]   The state habeas court rejected this claim because nothing in the record indicated that Aldaba made his statements to the police involuntarily.[32]

The due process clause prohibits "any criminal trial use against a defendant of [an] involuntary statement."   Mincey v. Arizona, 98 S. Ct. 2408, 2416 (1978).  "Coercive police activity is a necessary predicate to the finding that a [statement was] not voluntary."  Id. (internal quotation marks omitted).  The mere fact that a person talked to the police while "intoxicated" or "not cognizant of what he was [saying]" does not render a statement

---

[29]Petition, Docket Entry No. 1, p. 6.

[30]Id.

[31]Id.

[32]Conclusion of Law No. 4, Docket Entry No. 8-17, p. 104, citing Court of Appeals Opinion, Docket Entry No. 8-17, p. 135 ("Appellant has not pointed to any evidence of police overreaching or presented evidence suggesting that his statements to detectives were given under duress of hallucinations, illness, medication, or a private threat.").

involuntary.  Martinez v. Quarterman, 270 Fed. Appx. 277, 289-290 (5th Cir. 2008), citing Colorado v. Connelly, 107 S. Ct. 515, 522 (1986).

The record does not reflect evidence of any "coercive police activity."  Although Aldaba states that the police threatened him, this court defers to the state court's rejection of that assertion. Indeed, Aldaba's trial counsel stated in his affidavit that "Aldaba never suggested to me . . . that his statement to the police was involuntary."[33]  The absence of police coercion precludes a finding that Aldaba made his statements to the police involuntarily.

3.  **Claim Three:  Aldaba's attorney failed to request a jury instruction limiting the use of Aldaba's false statements to impeachment of Aldaba's credibility.**

Aldaba argues that his attorney should have requested a jury instruction permitting the jury to use Aldaba's false statements to the police solely to evaluate Aldaba's credibility.[34]  "It is the duty of the court, when so requested, to instruct the jury as to the limited purpose for which the impeaching evidence is admitted and advise the jury as to the extent to which the evidence may be considered."  United States v. Hill, 481 F.2d 929, 932 (5th Cir. 1973).  Aldaba's attorney chose not to request such a limiting instruction.  The state habeas court found that Aldaba's attorney made an informed tactical decision not to do so.[35]

---

[33]Affidavit, Docket Entry No. 8-17, p. 96.

[34]Id.

[35]Finding of Fact No. 12, Docket Entry No. 8-17, p. 102.

Many criminal trials involve facts that a trial attorney might "not want to draw any more attention to than necessary." Livingston v. Johnson, 107 F.3d 297, 308 (5th Cir. 1997). Different attorneys respond to these sorts of problems in different ways, and an "informed decision on trial tactics" can only rarely rise to the level of a constitutional violation. Skinner, 528 F.3d at 341 (finding constitutionally deficient performance only when a tactical choice "permeates the entire trial with obvious unfairness").

In this case, Aldaba's attorney stated in his affidavit that "I didn't get a limiting instruction because I didn't want to call attention to Aldaba's false statements to the police."[36]   That is, Aldaba's attorney did not want to "draw any more attention than necessary" to Aldaba's "unflattering testimony." Skinner, 528 F.3d at 341; Livingston, 107 F.3d at 308.   The affidavit shows that Aldaba's attorney made an informed tactical decision not to request a limiting jury instruction.

**4.   Claim Four:   Aldaba's attorney failed to request a jury instruction pursuant to Tex. Code Crim. Proc. Ann. art. 38.22.**

Aldaba argues that the trial court should have given the jury an instruction pursuant to the Texas Code of Criminal Procedure Article 38.22.   The Fourteenth Court of Appeals considered this claim on direct appeal.   Applying state law, the Fourteenth Court

---

[36]Affidavit, Docket Entry No. 8-17, p. 96.

-17-

of Appeals concluded that no part of Article 38.22 applied to Aldaba's case.[37]   The state habeas court agreed.[38]

Federal habeas proceedings are limited to reviewing questions of federal law.  Estelle v. McGuire, 112 S. Ct. 475, 480 (1991). Federal courts are not authorized to determine whether the state courts have misinterpreted the state's own laws.  Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011).  When the Texas Court of Criminal Appeals has made determinations on questions regarding its own state law, "those conclusions are state law."  Charles, 629 F.3d at 501.

A claim that a Texas court failed to properly apply Article 38.22 of the Texas Code of Criminal Procedure does not raise a question of federal law.  See Amador v. Quarterman, 458 F.3d 397, 412 (5th Cir. 2006) ("The prejudice inquiry in this case turns on a question of Texas state law:  whether the statement was in fact admissible under Article 38.22"); Evans v. McCotter, 790 F.2d 1232, 1238 n.6 (5th Cir. 1986) ("Regardless of whether the statement was properly admitted as a matter of the Texas [Code of Criminal Procedure Article 38.22], the alleged error must violate the federal constitution or federal laws for the writ to be granted.") (citations omitted).  This claim has no merit.

---

[37]Court of Appeals Opinion, Docket Entry No. 8-17, p. 137.

[38]Conclusion of Law No. 4, Docket Entry No. 8-17, p. 104.

## VI.  Certificate of Appealability

Although Aldaba has not yet requested a Certificate of Appealability ("COA"), the court may deny a COA sua sponte. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).  To obtain a COA for claims denied on the merits Aldaba must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 124 S. Ct. 2562, 2569 (2004).  To make such a showing Aldaba must demonstrate that it is debatable among reasonable jurists whether a court could resolve the issues in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Tennard, 124 S. Ct. at 2569.  For the reasons stated in this Memorandum Opinion and Order, Aldaba has not made a substantial showing of a denial of a constitutional right.  Accordingly, a Certificate of Appealability will not issue in this case.

## VII.  Conclusion and Order

For the reasons explained above, the court **ORDERS** the following:

1.  Respondent's Supplemental Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED**.

2.  The Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**.

3.  A Certificate of Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this the 31st day of July, 2012.

                                    SIM LAKE
                          UNITED STATES DISTRICT JUDGE